Jason S. Brookner
State Bar No. 24033684
Monica S. Blacker
State Bar No. 00796534
**ANDREWS KURTH LLP**
1717 Main Street, Suite 3700
Dallas, Texas 75201
Telephone: (214) 659-4400
Facsimile: (214) 659-4401

PROPOSED ATTORNEYS FOR THE DEBTORS

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| ROMACORP, INC., *et al.*, | § | Case No. 05-86818-11 |
| | § | |
| Debtors. | § | Jointly Administered |

**APPLICATION AUTHORIZING EMPLOYMENT OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR FOR THE DEBTORS PURSUANT TO SECTIONS 327(a) AND 328(a) OF THE BANKRUPTCY CODE AND RULES 2014 AND 2016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, EFFECTIVE AS OF THE PETITION DATE**

Romacorp, Inc. ("Romacorp" or "Tony Roma's"), and its related entities, the above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company"),[1] for their Application Authorizing Employment of Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan") as Financial Advisor for the Debtors Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure, Effective as of the Petition Date (the "Application"), pursuant to the terms of the engagement

---

[1] The Debtors are the following entities: Roma Restaurant Holdings, Inc.; Romacorp, Inc.; Roma Holdings, Inc.; Roma Franchise Corporation; Roma Systems, Inc.; Roma Prince George's, Inc; Roma Owings Mills, Inc.; and Roma Dining, L.P.

letter dated April 1, 2005 and amended November 1, 2005 (the "Houlihan Agreement"), a copy of which is attached hereto as Exhibit "B," respectfully represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue in this Court is proper pursuant to 28 U.SC. §§ 1408 and 1409.

## INTRODUCTION

3. On November 6, 2005 (the "Petition Date"), each of the Debtors filed with this Court their voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors are operating their businesses and managing their properties as debtors in possession. Concurrently with the filing of this Application, the Debtors have requested that their cases be jointly administered.

5. No creditors' committee has yet been appointed in these cases. No trustee or examiner has been appointed.

## BACKGROUND

6. Romacorp is the operator and franchisor of a world-wide casual dining chain specializing in ribs, with 226 restaurants located in 24 states and 30 foreign countries. Tony Roma's offers high quality food at moderate prices, with a full and varied menu that includes ribs, chicken, steaks, seafood, salads and other items. Tony Roma's network of stores currently consists of (i) 22 Company-owned stores, (ii) 86 domestic franchise stores and (iii) 118 international franchise stores. The majority of Tony Roma's 22 Company-owned stores are

clustered in three primary markets: (i) Miami, (ii) Orlando and (iii) Las Vegas. The Company also owns stores in satellite markets in Florida, Maryland, North Carolina, Georgia, and California.

7. As of November 1, 2005, the Company had 66 franchise partners, most of whom own and operate two or more restaurants and the largest of whom operates 30 restaurants. The Company's franchise partners operate 204 restaurants in 22 states and 30 foreign countries (including 31 restaurants in Canada and 30 restaurants in the Asia Pacific region).

8. The Company is headquartered in Dallas, Texas, and has over 1,350 employees across the United States.

9. As set forth more fully in the Declaration of David W. Head in Support of Chapter 11 Petitions and First Day Motions (the "Head Declaration"),[2] since 2003, the Company has faced, and continues to face, certain significant challenges. These include the continued increase in prices of critical supplies (*i.e.*, ribs), which has negatively impacted gross profit margins, certain limitations on capital expenditures and a lack of access to additional capital to remodel Company-owned stores. As a result, the Company retained Houlihan in April 2005 to assist the Company in evaluating various strategic alternatives, including a potential sale of the Company or stand-alone restructuring, in an effort to maximize stakeholder value. Houlihan has worked with the Company for the past six (6) months and assisted with evaluating and pursuing a number of strategic alternatives, including a sale of the Company to a strategic buyer and a chapter 11 reorganization.

10. Following conversations with an ad hoc committee of holders of over 60% of the New Senior Notes (the "Ad Hoc Committee"), it was determined that an organized, "pre-

---

[2] Capitalized terms used but not defined herein have the meaning ascribed to such terms in the Head Declaration.

arranged" chapter 11 filing was in the Company's best interests. As a result, the Company and seven (7) affiliates have filed for chapter 11 to effect a consensual restructuring. The general structure of the reorganization will be a consensual conversion of the New Senior Note holders' debt to equity in the reorganized Company; reinstatement or payment in full of GECFFC's claim under the Revolving Credit Facility; and a distribution to general unsecured creditors of (at their election) a percentage of cash or equity in the new Company. The Debtors have the support of the Ad Hoc Committee, and anticipate filing their proposed disclosure statement and chapter 11 plan shortly.

## RELIEF REQUESTED

11. By this Application, the Debtors respectfully request entry of an order authorizing the retention of Houlihan as their financial advisor, effective as of the Petition Date.

12. Furthermore, pursuant to section 328(a) of the Bankruptcy Code and Bankruptcy Rules 2014 and 2016, the Debtors request that the Court approve the fees and expenses (the "Fee Structure") and indemnification provisions (the "Indemnification Provisions") set forth in the Houlihan Agreement.

13. In April 2005, the Company retained Houlihan to assist with evaluating strategic alternatives and to render financial advisory services in connection with the Company's restructuring efforts and the evaluation of strategic alternatives. Since its retention, Houlihan has provided such services to the Debtors. The Debtors expect that Houlihan, in its role as financial advisor, will continue to provide such services to the Debtors in connection with their restructuring efforts. To date, Houlihan's services to the Debtors have included and/or will include:

(a) reviewing the Debtors' financial position, financial history, operations, competitive environment, and assets;

(b) assisting the Debtors in reviewing and evaluating potential strategic alternatives, including presentations to the Debtors' Board of Directors and creditor constituencies;

(c) developing a list of potential acquirers, investors and/or strategic partners (jointly referred to herein as "Investors") and interacting with such Investors to evaluate interest in a sale transaction;

(d) assisting the Debtors in preparing a business plan and financial projections;

(e) preparing voluminous materials utilized in connection with marketing efforts, including (i) summary teaser memorandum; (ii) confidential offering memorandum; and (iii) management presentation, provided to interested Investors;

(f) assisting the Debtors in creating an extensive on-line dataroom;

(g) submitting and discussing the Offering Memoranda with interested parties, coordinating, scheduling and attending management presentations with the Debtors and potential Investors, facilitating Investor due diligence and otherwise interfacing between the Company and potential Investors;

(h) contacting financing sources to arrange for (i) debtor in possession financing and (ii) new senior financing, either in connection with a sale transaction or on a stand alone basis;

(i) advising the Debtors as to various possible transaction structures;

(j) coordinating and organizing discussions with the holders of the Debtors' 10.5% senior notes regarding a potential sale transaction or stand alone restructuring transaction in an effort to reach a fully consensual agreement among the Debtors' stakeholders;

(k) creating presentation materials for various creditor constituencies outlining various strategic alternatives;

(l) facilitating creditors' due diligence, including participating on various teleconferences and attending diligence meetings;

(m) assisting the Debtors in matters related to the Debtors' use of cash collateral, and any other financing in these cases, including identifying potential sources of capital, assisting in the due diligence process, and negotiating the terms of any proposed financing, as requested;

(n) providing testimony in any chapter 11 case concerning any of the subjects encompassed by Houlihan's financial advisory services, if appropriate and as required;

(o) assisting the Debtors and Debtors' counsel in preparing documentation required in connection with the restructuring; and

(p) assisting the Debtors in the preparation of projections and a liquidation analysis in connection with any proposed plan of reorganization.

14. As a result of its representation of the Debtors, Houlihan has the necessary background to effectively and efficiently address many of the potential financial issues that may arise in the context of the Debtors' chapter 11 cases.

15. The Debtors respectfully submit that Houlihan is both uniquely qualified and able to advise the Debtors in connection with maximizing the Debtors' business enterprise value in these chapter 11 cases in an efficient and timely manner. Houlihan's professionals have extensive experience in matters involving complex financial restructurings. Indeed, Houlihan is a preeminent financial and restructuring advisor, with a reputation for creativity in complex situations. Houlihan and/or its principals have been involved as restructuring/bankruptcy advisors to a diverse group of debtors, creditors, bondholders, and creditors' committees in the chapter 11 cases of many companies, including, among numerous others, Mirant Corporation, Enron Corporation, Trump Hotels and Casino Resorts, Inc., Worldcom, Inc., HQ Global, Anthony Crane Rentals, Inc., Covad Communications, Danka Business Systems, Inc., Arthur D. Little, Inc., High Voltage Engineering, Inc., Encompass Services Corporation, Conseco, Inc. and Magellan Health Inc.

16. The Debtors believe that Houlihan's employment is necessary to the Debtors' ability to comply with their duties as debtors and debtors in possession. As more fully described in the Houlihan Agreement and subject to further order of this Court, it is proposed that Houlihan be employed to continue to work with the Debtors in connection with all facets of their reorganization efforts.

17. It is necessary that the Debtors employ financial advisors to render the foregoing professional services. Houlihan has stated its desire and willingness to act in these cases and render the necessary professional services as financial advisors for the Debtors.

18. To the best of the Debtors' knowledge and belief, the officers and employees of Houlihan do not have any connection with or any interest adverse to the Debtors, their creditors, or any other party in interest herein, or their respective attorneys and accountants, except as set forth herein and in the Statement of Houlihan and Declaration of Richard S. Klein Pursuant to Bankruptcy Rules 2014 and 2016(b) and Section 329 of the Bankruptcy Code (the "Klein Statement"), attached hereto as Exhibit "A."

19. The Debtors, therefore, believe that Houlihan is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code.

20. Accordingly, the Debtors submit that Houlihan's representation of the Debtors is permissible under the Bankruptcy Code and is in the best interests of all parties in interest.

21. The Debtors believe that Houlihan is qualified to represent their interests and the interests of their estates. Were the Debtors required to retain financial advisors other than Houlihan in connection with these chapter 11 cases, the Debtors, their estates and all parties in interest would be unduly prejudiced by the time and related expense for such advisors to familiarize themselves with the intricacies of the Debtors' business operations and capital structure.

22. Prior to the Petition Date, Houlihan performed certain professional services for the Debtors on two separate occasions. In 2003, Houlihan received $1,175,000.00 in fees and was reimbursed $34,387.05 for out of pocket expenses with respect to financial advisory services

provided in connection with a consensual out-of-court balance sheet restructuring. Beginning in April 2005, Houlihan has received payments totaling $400,000 for fees and has been reimbursed $62,079.85 for out of pocket expenses pursuant to the Houlihan Agreement.

23. The Fee Structure is as follows:

(a) *Retainer Fee*: Upon the execution of the Houlihan Agreement, the Debtors paid Houlihan a non-refundable cash retainer fee ("Retainer Fee") of $200,000.

(b) *Monthly Fees*: The Debtors will continue to pay a monthly fee to Houlihan of $50,000 per month ("Monthly Fee"). Payment of the Monthly Fees commenced on August 1, 2005, the fifth month of the Houlihan Agreement. To date, Houlihan has received four Monthly Fees pursuant to the Houlihan Agreement.

(c) *Transaction Fee*: In addition to the foregoing Retainer Fee and Monthly Fees, upon the closing or consummation of a Transaction,[3] the Debtors shall pay Houlihan a cash fee (the "Transaction Fee") equal to: (a) $1,000,000, plus (b) 3.0% of the Aggregate Gross Consideration received in excess of $60 million, less (i) 100% of the amount of the Retainer Fee paid to Houlihan; (ii) 100% of the amount of the first two Monthly Fees paid to Houlihan and (iii) 50% of the aggregate amount of all Monthly Fees subsequent to the first two Monthly Fees paid by the Debtors to Houlihan.

(d) *Expenses*: In addition to the fees described above, the Debtors will reimburse Houlihan, upon request from time to time, for all direct out-of-pocket expenses and indirect expenses (which indirect expenses shall not exceed $2,000 per month) reasonably incurred by Houlihan in connection with the matters contemplated by the Houlihan Agreement. Houlihan shall not incur more than $85,000 in the aggregate of reimbursable expenses without the Debtors' prior written consent.

24. Subject to the limitations set forth in the Houlihan Agreement and as may be modified by the Houlihan retention order, the Debtors agree to indemnify ("Indemnification Provisions") Houlihan against, and reimburse it for reasonable costs and expenses in relation to, any claim in connection with this engagement. It is the Debtors' understanding and belief that the Indemnification Provisions are customary within the financial advisor industry and that

---

[3] All terms not specifically defined shall have the meaning set forth in the Houlihan Agreement, attached hereto as Exhibit "B."

Houlihan requires terms substantially similar to those in the Houlihan Agreement in connection with its representation of clients other than the Debtors.

25. The Houlihan Agreement may be terminated by the Debtors or Houlihan upon ten (10) days' written notice. Notwithstanding the foregoing, any such termination shall not affect the Debtors' obligations under the Indemnification Provisions and Houlihan shall be entitled to the Transaction Fee in the event that a Transaction is completed at any time prior to the expiration of twelve full months following the termination of the Houlihan Agreement by the Debtors without cause or by Houlihan with cause. With respect to a termination by the Debtors, "cause" shall include gross negligence, willful misconduct, or a material breach by Houlihan of the terms of the Houlihan Agreement.

26. In accordance with the terms of the Houlihan Agreement, the Debtors seek approval of the Fee Structure and Indemnification Provisions pursuant to section 328(a) of the Bankruptcy Code. Section 328(a) provides in part that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 328(a), therefore, permits the Court to approve the Fee Structure and Indemnification Provisions proposed in the Houlihan Agreement in connection with the Debtors' retention of Houlihan.

27. The Debtors believe that the Fee Structure is fair and reasonable and should be approved under section 328(a) of the Bankruptcy Code. The Fee Structure appropriately reflects the nature of the services to be provided by Houlihan and the fee structures typically utilized by leading financial advisors when billing on a non-hourly basis. In particular, the Debtors believe that the Fee Structure creates a proper balance between fixed, monthly fees and contingency fees.

Similar fixed and contingency fee arrangements have been approved and implemented in other large chapter 11 cases. *See, e.g. In re Mirant Corp., et al.*, No. 03-46590-DML-11 (Bankr. N.D. Tex. December 8, 2003) (authorizing retention of The Blackstone Group L.P. on similar compensation terms as the instant case; monthly fees reviewed under standards set forth in section 328(a) of the Bankruptcy Code, instead of section 330, and Restructuring Fee would be reviewed for reasonableness based on results obtained, etc.), *In re Kaiser Aluminum Corporation, et al.*, No. 02-10429 (JKF) (Bankr. D. Del. Mar. 19, 2002) (authorizing the retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); *In re Trans World Airlines, Inc.*, No. 01-0056 (PJW) (Bankr. D. Del. Jan. 26, 2001) (authorizing retention of Rothschild, Inc. as financial advisors for the debtors, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code); *In re Covad Communications Group, Inc.*, No. 01-10167 (JJF) (Bankr. D. Del. Nov. 21, 2001) (authorizing retention of Houlihan Lokey with compensation subject to standard of review set forth in section 328(a)); *In re Harnischfeger Industries, et al.*, No. 99-02171 (PJW) (Bankr. D. Del. Feb. 8, 2000) (authorizing retention of The Houlihan Group L.P. pursuant to section 328(a)).

28. As set forth above, the Debtors also believe that Indemnification Provisions are customary and reasonable for financial advisory engagements, both out-of-court and in chapter 11 proceedings. *See e.g., In re United Artists Theatre Company*, 315 F.3d 217 (3rd Cir. 2003) (order authorizing the indemnification of Houlihan Lokey by the debtors). The Indemnification Provisions are similar to other indemnification agreements that have been approved by other bankruptcy courts. *See, e.g., In re CTC Communications Group. Inc.*, No. 02-12873 (PJW) (Bankr. D. Del. Nov. 15, 2002) (order authorizing retention of Gleacher Partners LLC on similar terms, including the Indemnification Provisions, as Houlihan Agreement); *In re W.R. Grace &*

*Co.*, No. 01-01139 (JJF) (Bankr. D. Del. June 22, 2001) (order authorizing retention of The Houlihan Group L.P. under similar terms as Houlihan Agreement, including, among other things, similar indemnification provisions).

29. The Debtors believe that the Fee Structure and Indemnification Provisions set forth in the Houlihan Agreement are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The Fee Structure and Indemnification Provisions appropriately reflect (i) the nature of the services to be provided by Houlihan and (ii) the fee structures and indemnification provisions typically utilized by Houlihan and other leading financial advisory firms which do not bill their clients on an hourly basis and generally are compensated on a transactional basis.

30. For all of the reasons set above, the Debtors respectfully submit that the employment of Houlihan on the terms and conditions set forth herein and the Houlihan Agreement is in the best interest of the Debtors, their creditors and all parties in interest.

## NOTICE

31. Notice of this Application has been provided to the office of the United States Trustee for the Northern District of Texas, the Ad Hoc Committee, the holders of the twenty (20) largest unsecured claims against the Debtors on a consolidated basis, and certain other parties appearing on the attached Certificate of Service. The Debtors respectfully submit that no other or further notice need be provided.

WHEREFORE, the Debtors respectfully request that this Court enter an order: (i) approving the Debtors' retention of Houlihan as their financial advisor, effective as of Petition Date; and (ii) granting the Debtors such other and further relief as may be just and proper.

Respectfully submitted this 6th day of November, 2005.

**ROMACORP, INC. AND ITS RELATED ENTITIES, DEBTORS AND DEBTORS IN POSSESSION**

/s/ David W. Head
David W. Head
Chief Executive Officer

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of November, 2005, he caused a true and correct copy of the foregoing document to be hand delivered to the Office of the United States Trustee, 9C60 Earle Cabell Federal Building, 1100 Commerce Street, Dallas, Texas 75242 and caused the same to be served on the parties appearing on the attached Service List via first class United States mail, postage prepaid and, where possible, via electronic mail and/or via overnight mail.

/s/ Jason S. Brookner
Jason S. Brookner

DAL 578568.1

# Romacorp, Inc.
# Master Service List



Henry Jack
Credit Agricole Indosuez
666 Third Avenue
New York, NY 10017-4011

John Morgan/Chris Mawn/Nathan Hall
Highland Capital Management LP
Two Galleria Tower, Suite 1300
13455 Noel Road
Dallas, Texas 75240

Ted Haag
NorthStar/ING Investments LLC
7337 E. Doubletree Ranch Road
Scottsdale, AZ 85258

Earl Rotman
Genuity Capital Partners
Scotia Plaza, 40 King St. W., Suite 4900
Toronto, Ontario
M5H 3Y2

Tom A. Howley
Haynes and Boone, LLP
1221 McKinney
Suite 2100
Houston, TX 77010

Mark Hsu/Darrell B. Leong
Wells Fargo
MAC 80112-144
550 California St., 14th Fl.
San Francisco, CA 94104

Scott Everett
Haynes and Boone, LLP
901 Main St., Suite 3100
Dallas, TX 75202

PFG
P. O. Box 730
Dover, FL 33527

Eric Brovick
Credit Suisse Asset Management
466 Lexington Avenue, Floor 17
New York, NY 10017-3136

William Angelowitz
KEA Capital
225 W. 34th Street, Suite 403
New York, NY 10122-0700

George Edwards
Prudential
751 Broad Street
Newark, NJ 07102-3714

Andrew Grabel / C. Torrente / J. Korff
Kirkland & Ellis
Citigroup Center
153 East 53rd Street
New York, NY 10022

Richard S. Klein/Andrew Heller
Saul E. Burian
Houlihan Lokey Howard & Zukin
245 Park Avenue, 20th Floor
New York, NY 10167

David S. Lobel / John F. McCormack
Eric Bommer
Sentinel Capital Partners, L.P.
777 Third Avenue, 32nd Floor
New York, NY 10017

George F. McElreath, Esq.
United States Trustee
Office of the United States Trustee
1100 Commerce Street, Room 9C60
Dallas, Texas 75242

Florida Department of Revenue
1379 Blountstown Hwy.
Tallahassee, FL 32304-2716

Linen Grunder
Deltec Asset Management Corp.
645 5th Avenue
New York, NY 10022-5923

Bruce Monrad
Chapin Mechem
Northeast Investors
50 Congress Street, Suite 1000
Boston, MA 02109

Jason S. Brookner
Monica S. Blacker
Andrews Kurth LLP
1717 Main Street, Suite 3700
Dallas, Texas 75201-7301

David W. Head
David G. Short
Romacorp, Inc.
9304 Forest Lane, Suite 200
Dallas, Texas 75243

Tom Flannery
Credit Suisse First Boston
466 Lexington Ave.
New York, NY 10017

The Bank of New York
Default Administration Group
Corporate Trust - 8 West
101 Barclay Street
New York, NY 10286
Attn: Marty Feig

Peter Goodman
Andrews Kurth LLP
450 Lexington Ave., 15th Fl.
New York, NY 10017

Liberty Mutual Insurance Co.
2100 Walnut Hill Lane, Suite 100
Irving, TX 75038

Radix Construction
2422 12th Avenue Road #153
Nampa, Id  83686-6300

US Foodservice
c/o Bank One
P. O. Box 905100
Charlotte, NC  28290-5100

Fashion Seal Uniforms
P. O. Box 932058
Atlanta, GA  31193-2058

US Foodservice – Las Vegas
P. O. Box 3911
Las Vegas, NV  89127

Carroll County Foods
P. O. Box 779
New Windsor, MD  21776

Freshpoint South Florida
475 NE 185th Street
North Miami Beach, FL  33179

Lockton
P. O. Box 802707
Kansas City, MO  64180-2707

Reds Market Orlando
8801 Exchange Drive
Orlando, FL  32809

DAL:578568.1