U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed February 2, 2006

United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | § § § | |
| ROMACORP, INC., | § § | Case No. 05-86818-BJH-11 |
| Debtor. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Bill and Joanie Dinsdale's (the "Lessors") Objection by Landlords, Bill and Joanie Dinsdale, To Proposed Retroactive Rejection of Coral Springs Lease (Doc. No. 18) and Request for Reconsideration of Order Entered November 23 (Doc. No. 111) (the "Motion to Reconsider"). Dkt # 124. Romacorp, Inc., (the "Debtor") opposes the Motion to Reconsider.

A hearing was held on the Motion to Reconsider on December 20, 2005 (the "Hearing"). Though there was a dispute between the parties as to the propriety of the Motion to Reconsider, the parties stipulated to proceeding with the Hearing. At the conclusion of the Hearing, the Court took the matter under advisement. The Court has jurisdiction over the Motion to Reconsider pursuant to

28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**I.    Factual Background**

Debtor operates a world-wide chain of casual dining restaurants under the name Tony Roma's. The Debtor's network of stores includes 22 Debtor-owned stores and a number of national and international franchise stores.

Prior to its Chapter 11 filing, the Debtor sought to close several of its Debtor-owned stores that were producing negative cash flow. In an effort to prepare for rejection of the leases on these stores, the Debtor made arrangements prior to the petition date to cease operations at these stores and to vacate the premises. One of these stores was Store # 3044 in Coral Springs, Florida (the "Coral Springs Lease").

On November 1, 2005, five days prior to its November 6, 2005 Chapter 11 filing (the "Petition Date"), the Debtor sent the Lessors a letter tendering notice (the "Notice Letter") of the closure of the Debtor's restaurant located on the Coral Spring Lease. Declaration of David G. Short ¶ 2 ("Short Declaration"), Dkt # 189. The Notice Letter was sent by U.S. mail to the following address:

> Bill and Joanie Dinsdale
> 13700 SA 266th Street
> Kent, Washington 98042

*Id*. ¶ 3. The parties stipulated that this was the incorrect address for the Lessors. The correct street address of the Lessors is 13700 ***SE*** 266th Street.

In the Notice Letter, the Debtor indicated to the Lessors that it was "tendering notice of the closure of our restaurant located in the [Coral Springs Lease]." *Id*. Exh. A. Additionally, the Debtor

noted that it was "tendering possession effective immediately" and was "in the process of removing its personal property and cleaning the [Coral Springs Lease], following which the keys to the [Coral Springs Lease] will be delivered to [Lessors]." *Id*. The Lessors confirmed their receipt of the Notice Letter via telephone call made to David Short on November 4, 2005, two days prior to the Petition Date. *Id*. ¶ 4.

The keys to the Coral Springs Lease were mailed to the Lessors on November 4, 2005, through DHL Worldwide Express. *Id*. Exh. B. The parties stipulated that the keys to the Coral Springs Lease were not received by the Lessors until November 7, 2005, one day after the Petition Date. Notwithstanding the Debtor's statement in the Notice Letter regarding the removal of its personal property from the Coral Springs Lease, certain articles of personal property, including tables and chairs, a refrigerator, an ice machine, and other large items (the "Personal Property") were left behind by the Debtor at the Coral Springs Lease. Further, as revealed at the Hearing, the Debtor's largest secured creditor, GE Capital Franchise Finance Corporation ("GECFFC"), has a security interest in the Personal Property. The Debtor also admitted at the Hearing that it has not sought to abandon the Personal Property, and, as of the Hearing, the Personal Property was still located at the Coral Springs Lease.

On the Petition Date, the Debtor filed the Motion Pursuant to Section 365(a) of the Bankruptcy Code for Authority to Reject Certain Unexpired Leases of Nonresidential Real Property Effective as of the Petition Date (the "Rejection Motion"), Dkt # 18, and its request for an expedited hearing (the "Expedited Motion"). Dkt # 19. In the Rejection Motion, the Debtor sought, *inter alia*, to retroactively reject to the Petition Date certain unexpired leases held by the Debtor, including the Coral Springs Lease.

On November 7, 2005, the Debtor served the Rejection Motion and the Expedited Motion on the Lessors at the same incorrect address, 13700 SA 266th Street, via FedEx Express. Declaration of Jason S. Brookner ¶ 2 ("Brookner Declaration"), Dkt # 188. Notwithstanding the typographical error in the Lessors' address, FedEx made delivery of the package to the Lessors at their correct address on November 8, 2005. *Id*. Exh. B.

On November 10, 2005, the Court granted the Expedited Motion, though no order was entered on the Court's docket. On the same date, the Debtor filed and served a notice of hearing (the "Notice of Rejection Hearing") on the Rejection Motion, thereby giving notice that the Rejection Motion had been set for hearing on November 22, 2005, at 3:15 p.m. Dkt # 66. The Lessors acknowledge receipt of the Notice of Rejection Hearing, but not until November 21, 2005—less than 24 hours prior to the scheduled hearing. Motion to Reconsider ¶¶ 1, 5. While the Debtor disputes the timing of receipt of the Notice of Rejection Hearing, it offered no evidence to contradict the Lessors' contention.

The Court held a hearing on the Rejection Motion (the "Rejection Hearing") on November 22, 2005, and noting no opposition to the Rejection Motion,[1] the Court granted substantially all the relief requested in the Rejection Motion, including retroactive rejection of the Coral Springs Lease to the Petition Date. An Order Pursuant to Section 365(a) of the Bankruptcy Code Authorizing Rejection of Certain Unexpired Leases of Nonresidential Real Property Effective as of the Petition Date (the "Rejection Order") was entered on November 23, 2005. Docket # 111.

---

[1] The Lessors admit in the Motion to Reconsider that they contacted the Debtor and its bankruptcy counsel on the date of the Rejection Hearing. Motion to Reconsider ¶ 5. However, it is unclear whether this contact was made prior to the Rejection Hearing or after the Court ruled on the Rejection Motion. Regardless, no objection to the Rejection Motion was made known to the Court at the Rejection Hearing.

**Memorandum Opinion and Order**                                                                                   **Page 4**

On November 28, 2005, five days after the entry of the Rejection Order, the Lessors filed the Motion to Reconsider. In the Motion to Reconsider, the Lessors allege, *inter alia*, that because they received shortened notice of the Rejection Hearing, they were denied an opportunity to be heard in connection with the Rejection Motion. Motion to Reconsider ¶ 1. The Lessors also point out that the entry for the Notice of Rejection Hearing on the Court's docket indicated that objections to the Rejection Motion were due by November 28, 2005—six days after the Rejection Motion was set for hearing. *Id*. ¶ 3; Dkt # 66. Further, the Lessors contend that the Debtor made misrepresentations to the Court in the Rejection Motion, arguing that the Debtor failed to relinquish possession of the Coral Springs Lease prior to the Petition Date because the Personal Property was left on the premises and the keys to the premises were not returned to the Lessors prior to the Petition Date. Consequently, the Lessors seek entry of an order denying the retroactive effect of the Debtor's rejection of the Coral Springs Lease.[2]

The Debtor filed its response in opposition to the Motion to Reconsider (the "Response"), Dkt # 186, on December 16, 2005. The Debtor contends that it properly vacated the Coral Springs Lease and gave actual notice of its surrender of the lease to the Lessors prior to the Petition Date, thereby entitling it to retroactive rejection.

II.     **Legal Analysis**

Section 365(a) of the Bankruptcy Code states that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (2000). In a Chapter 11 case where, as here, the Debtor is operating as a debtor in

---

[2] The Lessors do not oppose the Debtor's rejection of the Coral Springs Lease. The sole dispute is over the proposed retroactive rejection of the Coral Springs Lease as of the Petition Date.

**Memorandum Opinion and Order**                                                                                                                                                            Page 5

possession of the bankruptcy estate in place of a trustee, the Debtor is vested with all the rights, powers, and duties that the trustee would otherwise have. 11 U.S.C. § 1107(a) (2000). As noted previously, the sole issue in dispute is whether the Debtor made it so undeniably clear prior to the Petition Date that it was rejecting the Coral Springs Lease that the equitable remedy of retroactive rejection is appropriate.

This Court follows the rule that rejection of an unexpired lease is generally effective as of the date of the entry of an order of the court approving such rejection. *In re Amber's Stores, Inc.*, 193 B.R. 819, 826 (Bankr. N.D. Tex. 1996). This rule gives effect to the requirements of section 365 of the Bankruptcy Code and Bankruptcy Rules 9014 and 6006. *Id.* However, rigid adherence to this rule can sometimes produce inequitable results. Accordingly, this Court has determined that, in certain circumstances, "nothing precludes [the Court], based on the equities of the case, from approving . . . rejection of a non-residential real property lease retroactively to an earlier date." *Id.* at 827.

In *Amber's Stores*, this Court permitted rejection of an unexpired lease of non-residential real property retroactive to the petition date. *Id.* In that case, the debtor had vacated the leased premises and turned over the keys to the property at least one month prior to the petition date. *Id.* at 826 n.35. In citing similar outcomes from other circuits, the Court noted that the rationale for its decision was to avoid penalizing the debtor for the time lag between the filing of a motion to reject and the entry of an order by the Court when the facts gave a clear indication of an intent to reject. *See id.* at 827.

Since *Amber's Stores*, this Court has had an opportunity to further address a situation in which the equities of a case warranted retroactive rejection of unexpired leases. In *In re Cafeteria Operators, L.P.*, the Court permitted the retroactive rejection of leases of certain restaurant locations

operated by a debtor who had vacated the restaurants prior to the petition date. 299 B.R. 384, 394-94 (Bankr. N.D. Tex. 2003). The Court allowed the retroactive rejection to "the later of 1) the date Debtors' Motions [to reject] were filed or 2) the date the leased space was vacated because 'the debtor should not be permanently penalized by the time lag between filing a motion and entry of an order by the court.'" *Id.* at 394 (quoting *Amber's Stores*, 193 B.R. at 827).

This Court is not alone in allowing retroactive rejection of unexpired leases; in fact, a number of other courts around the country have recognized this equitable practice. *Pac. Shores Dev., LLC v. At Home Corp. (In re At Home Corp.)*, 392 F.3d 1064, 1065-66 (9th Cir. 2004) (acknowledging bankruptcy court's equitable power to order retroactive rejection of non-residential lease to date of motion by lessee, even if landlord has not yet retaken possession of premises); *Thinking Machs. Corp. v. Mellon Fin. Svcs. Corp. (In re Thinking Machs. Corp.)*, 67 F.3d 1021, 1029 (1st Cir. 1995) (acknowledging bankruptcy court's equitable power to order retroactive rejection); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (D. Del. 2004) (recognizing bankruptcy court's equitable power to retroactively reject a lease, but refusing to authorize retroactive rejection of restaurant lease beyond date of surrender of premises to lessor); *TW, Inc. v. Angelastro (In re TW, Inc.)*, No. 03-10785 (MFW), Civ. 03-533-SLR, 2004 WL 115521 at * 1-2 (D. Del. Jan. 14, 2004) (refusing to overturn bankruptcy court's decision not to grant retroactive rejection to debtor who, despite having closed store and given notice of intention to reject lease to landlord, failed to turn over keys to property prepetition, because bankruptcy court's finding that equities did not favor debtor was not clearly erroneous); *BP Energy Co. v. Bethlehem Steel Corp. (In re Bethlehem Steel Corp.)*, 2002 WL 31548723 at *3-4 (S.D.N.Y. 2002) (recognizing bankruptcy court's equitable power to order retroactive rejection of leases, even to a date prior to that upon which objector raised objection to

the rejection); *Stonebriar Mall Ltd. P'ship v. CCI Wireless, LLC (In re CCI Wireless, LLC)*, 297 B.R. 133, 140 (Bankr. D. Colo. 2003) (finding retroactive rejection of retail leases permissible "at least as early as the filing date of [a] motion to reject," where debtor had relinquished possession of the premises covered by the leases prior to filing its motion); *In re O'Neil Theaters, Inc.*, 257 B.R. 806, 808 (Bankr. E.D. La. 2000) (permitting retroactive rejection of movie theater lease to petition date where debtor had vacated premises prepetition and landlord had exercised "full dominion and control over the property" by padlocking the premises prepetition).

While there are some inconsequential similarities in the facts of this case and those present in *Amber's Stores*, the most crucial fact present here which was not present in *Amber's Stores*, and the one that ultimately precludes the Court from upholding its prior order allowing retroactive rejection of the Coral Springs Lease, is the fact that the Debtor left the Personal Property in the Coral Springs Lease. While the parties dispute the significance of the Personal Property left at the premises, it is undisputed that GECFFC has a security interest in the Personal Property and the Debtor had neither removed the Personal Property nor sought to abandon it under section 554 of the Bankruptcy Code as of the date of the Hearing. Because the Personal Property is property of the estate under section 541 of the Bankruptcy Code, the Lessors cannot make use of the Coral Springs Lease (e.g., by removing the Personal Property or re-letting the premises along with the Personal Property) without first seeking relief from the automatic stay imposed by section 362 of the Bankruptcy Code.

At the Hearing, the Debtor relied on *In re Ames Dep't Stores, Inc.*, 306 B.R. 43 (Bankr. S.D.N.Y. 2004), to support its argument that, notwithstanding the Debtor's failure to remove the Personal Property from the Coral Springs Lease, retroactive rejection is still permissible. In *Ames*, the bankruptcy court permitted rejection of two unexpired leases of non-residential real property on

which the debtor had operated retail outlets. 306 B.R. at 50-51. In both instances, the debtor had (i) notified the objecting lessor of its intention to reject, (ii) vacated the leased premises, and (iii) turned the keys to the properties over to the lessor by the rejection date. *Id*. at 49. However, the debtor in *Ames* failed to remove all of its personal property from the stores prior to rejection. Specifically, the debtor left display fixtures consisting of shelving, racks, and bins on the premises, notwithstanding express lease provisions which required the debtor to return the premises "clean and/or free of goods and effects." *Id*. at 49-51. Though the lessors argued that the failure to comply with the remove-and-clean clauses of the leases resulted in an improper surrender prohibiting rejection, the court held that the statutory right to reject given a debtor under section 365 of the Bankruptcy Code could not be qualified by non-Bankruptcy Code requirements imposed on the parties through their own contractual agreement. *Id*. at 51-52.

*Ames* is distinguishable, however, because *Ames* did not deal with retroactive rejection. Further, the debtor in *Ames* gave the lessor specific notice of its intent to abandon the personal property on the premises when the debtor gave notice of its rejection of the lease. Here, the Debtor gave no notice of any intent to abandon the Personal Property in the Coral Springs Lease. In fact, the language of the Notice Letter indicated that the Debtor was removing the Personal Property, "following which the keys to the [Coral Springs Lease] would be delivered to [Lessors]." Short Declaration Exh. A. The Debtor gave no indication it was removing only *some* of its personal property and abandoning the rest. In addition, in *Ames* it was agreed between the parties that the abandoned personal property was of "inconsequential value." Unlike the personal property in *Ames*, the Personal Property here is of an unknown and unstipulated value. In light of the fact that the value of the Personal Property is unknown, coupled with the fact that GECFFC maintains a security interest

in the Personal Property, the Court cannot declare the Personal Property to be of "inconsequential" value based on the record before it.

The equities of this case do not warrant retroactive rejection of the Coral Springs Lease. While the Debtor did give notice of its intent to reject the Coral Springs Lease prior to the Petition Date, the Debtor's failure to remove the Personal Property from the Coral Springs Lease creates what may be best deemed an illusory rejection. Because the Debtor failed to vacate the Coral Springs Lease prior to filing the Rejection Motion, the Court need go no further than the position it took in *Cafeteria Partners*—retroactive rejection is permissible no earlier than the time the lessee vacates the premises.

The Court cannot require the Lessors to guess as to whether or not the Debtor truly rejected the Coral Springs Lease; to do so would be inequitable and place an onerous and unnecessary burden upon the Lessors. Before the Court should grant the extraordinary equitable remedy of retroactive rejection, something more than the Debtor's business judgment must be shown. Otherwise, the exception would completely engulf and nullify the general rule that rejection is effective on the date of the entry of a court order authorizing rejection.

### III. Conclusion

The Motion to Reconsider is granted. The Court will allow the rejection of the Coral Springs Lease effective December 20, 2005, the date of the Hearing, as the Lessors requested.

**SO ORDERED.**

### End of Order ###